[Civ. No. 1756. Second Appellate District.—September 28, 1915.]

L. H. COOPER, Respondent, v. CHARLES STANSBURY et al., Appellants.

CHARLES STANSBURY, Cross-Complainant and Appellant, v. L. H. COOPER et al., Copartners, D. A. VAN VRANKEN et al., Cross-Defendants and Appellants; REINHARDT J. BUSCH et al., Cross-Defendants and Respondents.

CONTRACTS—PROPOSED EXCHANGE OF PROPERTY—CONDITIONAL OFFER— QUALIFIED ACCEPTANCE.—Where a proposal for the exchange of properties contained the condition that all stock and tools on the property should be left there, and the exchange be subject to there being then developed a certain amount of water on the land, which proposal when submitted to the other party was indorsed and signed by him as a purported acceptance, but with the qualification that he did not guarantee any amount of water on the property, this qualification not being accepted by the other party, there was no acceptance sufficient to constitute the transaction a contract.

ID.—FORMATION OF CONTRACT—ACCEPTANCE.—An acceptance to result in a binding contract must meet exactly and precisely the terms proposed in the offer; and if something different is made a condition of the alleged acceptance, it amounts only to a new proposal, which, if not accepted in turn on the part of the first offerer, becomes null.

APPEAL from a judgment of the Superior Court of San Bernardino County.   Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Lewis W. Andrews, and Thomas O. Toland, for Appellant, Charles Stansbury.

Cedric E. Johnson, for Appellants, Van Vranken and Webster.

N. Blackstock, for Respondents, Busch and Cooper.

E. Hardesty, and Shepard & Alm, for Respondent, L. H. Cooper.

JAMES, J.—This is an appeal taken by cross-complainant and certain of the defendants from a judgment entered in favor of plaintiff.

The action was brought to secure a decree quieting title in the plaintiff as against a claim evidenced by a certain writing which had been placed of record in the county where plaintiff's real property was located. It was asserted that the effect of this writing was to cloud the title of plaintiff. Briefly the facts are: Plaintiff being the owner of certain real property in the county of San Bernardino, had negotiation with Charles Stansbury, the cross-complainant, whereby it was sought to effect an agreement for the exchange of the plaintiff's property for certain corporate stocks and some real estate lying within the county of Los Angeles. Defendants Van Vranken and Webster were agents acting for Stansbury in the matter. There were other agents, Miller and Iveson, who represented Cooper. After considerable negotiation was had, Stansbury, the owner of the Los Angeles property, made a proposal in writing which set forth the descriptions of the properties of Stansbury and Cooper which it was proposed to exchange. There was one clause in this proposal, wherein the condition of Cooper's property was referred to, which is important to be considered. It is as follows: "All stock and tools to be left on the ranch and subject to their being now developed 120 inches of water on this 194 acres." When this proposal was submitted to Cooper there was indorsed upon the same and signed by Cooper what purported

to be an acceptance of the proposition, but to which acceptance was added this qualification: "I do not guarantee any amount of water on the ranch." After this writing was submitted to Stansbury, the parties visited the Cooper Ranch and Stansbury, who appeared to be an experienced man in that line of business, measured the head of water which was pumped from the Cooper wells and announced that it fell far short of one hundred and twenty inches; in fact, according to Stansbury's measurement, there was considerably less than one hundred inches of water capable of being pumped from the wells. Stansbury returned to Los Angeles and on the following day his agent notified one of the agents of Cooper that Stansbury would not make the trade unless an added difference was paid to him of five thousand dollars, which he proposed to have evidenced by a mortgage. The testimony showed that one of the agents of Stansbury, together with an agent of Cooper, visited Stansbury at his office and that Stansbury was there told that Cooper would not assume any more mortgage debt. One of the witnesses testified that Stansbury then said: "Well, I don't care much for the ranch anyway. It will cost a lot of money to develop and to make it useful to me." One of the agents further testified that when he visited Stansbury at a later time and tried to come to an agreement with him regarding the exchange, Stansbury said that he would put the deal through if one thousand dollars was paid to him as additional consideration. This one thousand dollars the agents at first proposed to raise among themselves in order to carry the deal through, but this project was never consummated. The qualified acceptance of Cooper as hereinbefore referred to was signed on June 15, 1912. On the twenty-seventh day of June Stansbury wrote a letter to his agents, expressing a waiver of the water difference and announcing an acceptance of the proposed exchange proposition as made by Cooper. This notification, it seems, did not reach Cooper personally until after he had made an engagement to transfer his property to another person, which he did on July 11, 1912. This person, with whom a contract for the purchase of the Cooper property was made, was the defendant R. J. Busch. In investigating the title of Cooper at the time of the Busch transaction it was found that the agents of Stansbury had caused to be placed of record the alleged contract between Stansbury and Cooper for the exchange of

their properties, and deeming this to be a cloud upon the title of Cooper, this action was commenced, the original defendants being, in addition to Stansbury, Van Vranken and Webster. Stansbury then filed a cross-complaint in which he asserted validity for the alleged exchange contract and sought to compel specific performance thereunder. The trial court determined that there had been no contract and we think, after a careful examination of the record, that such a judgment is fully sustained when we apply a few of the elementary principles of law governing the formation of contracts to the evidence here submitted. It is argued with much vigor that because in the writing made by Cooper in answer to the written proposal of Stansbury the former stated that he "accepted the proposition," such language imported an unqualified acceptance which was not modified or changed by anything otherwise contained within Cooper's writing. In the first place, the proposition of Stansbury was conditioned upon there being actually developed upon the Cooper land one hundred and twenty inches of water; in other words, if there was not one hundred and twenty inches there, his offer was withdrawn or would be nonacceptable. Answering this proposition, by express terms incorporated in the writing, Cooper declined to make the condition as to there being a specified quantity of water on his land a part of the contract at all; in other words, he on his part proposed no acceptance of the offer as made by Stansbury. It is one of the very simple rules of law affecting the formation of contracts that an acceptance to result in a binding contract must meet exactly and precisely the terms proposed in the offer. If something different is made a condition of the alleged acceptance, it amounts only to a new proposal which, if not accepted in turn on the part of the first offerer, becomes null. Now, applying these rules to the condition of facts as the court found them to be, and as the testimony furnishes evidence of, we have this situation: Stansbury made a certain proposition for the exchange of his property for that of Cooper. Cooper declined to accede to all of the conditions mentioned by Stansbury, and so presented a counter-offer. Stansbury, after investigation as to the water condition, refused to accept this counter-offer and rendered it of no effect by returning with a new and different proposition on his part. At this point Cooper was justified in terminating the negotiations

and in considering that he was no longer bound by any of the proposals made to Stansbury. Counsel for appellants in their brief, referring to Cooper's alleged acceptance of the first offer of Stansbury, say that if the terms of that acceptance "mean anything at all, they mean that Cooper did accept Stansbury's offer, and the contract was then and there complete, subject only to Stansbury's right to withdraw if he saw fit, in case there was not 120 inches of water." As a legal conclusion such a deduction, if warranted, would have left all of the advantage in the hands of Stansbury: That is, while Cooper proposed to exchange his properties without assuring Stansbury that there was developed any particular quantity of water, Stansbury could either hold him to the proposition as he had made it in his original offer or withdraw, at his option, upon finding that there was not to be had the amount of water specified. Clearly it was Stansbury's duty to accept Cooper's proposition as it was made—"to take it or leave it." He was not entitled to reject it by proposing new terms and after failing to drive a bargain more profitable to himself, return and say to him, "Well, you are bound by your original proposition, which I accept."

The legal conclusions which are required to be drawn from the facts found by the court, and which are fully sustained by the evidence, leave small basis for a claim of merit in support of this appeal.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.